IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOLLY ANN WILLIAMS        *

       Plaintiff,        *

       v.        *        Civil Action No. PX 15-3685

       *

UNITED STATES et al.,        *

       Defendants.

******

**MEMORANDUM OPINION**

Pending in this civil rights case is a motion to dismiss, or alternatively, for summary judgment (ECF No. 26) filed by Defendant Officer Anthony Pierelli. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the motion is denied.

**I.     BACKGROUND**[1]

In the early afternoon of January 14, 2014, Michael Benjamin and four passengers were travelling on the Suitland Parkway in Maryland when Defendant United States Park Police Officer Anthony Pierelli ("Officer Pierelli") pulled alongside the vehicle and then behind it before pulling over Mr. Benjamin. ECF No. 1 at 2. Besides Mr. Benjamin, the other passengers in the vehicle included Plaintiff Holly Ann Williams ("Plaintiff"), who is the registered owner of the car Mr. Benjamin was driving.

Officer Pierelli explained that the reason he stopped the vehicle was because the month and year expiration stickers were reversed on the license plate in violation of Maryland law. *Id.* at 3. Plaintiff alleges that the vehicle's registration stickers were properly affixed to the license

---

[1] Unless otherwise noted, all facts are construed in the light most favorable to Plaintiff, the nonmoving party.

plate in the correct order. *Id.* Officer Pierelli nonetheless approached the vehicle and requested

identification from both Mr. Benjamin and Plaintiff. Several of the vehicle's occupants were

ordered to step out of the vehicle for questioning.

After approximately forty-five minutes, a female Prince George's County police officer

arrived on the scene to frisk Plaintiff. Officer Pierelli then took Plaintiff into custody. Plaintiff

alleges that Officer Pierelli arrested her on the basis of a Washington County, Maryland warrant.

ECF No. 1 at 3. Upon learning that she was being arrested on a Washington County warrant,

Plaintiff protested to Officer Pierelli that the warrant could not possibly be for her because she

had never even been in Washington County. *Id.* The Officer ignored Plaintiff's protests and the

corroborating information provided on Plaintiff's identification showing she resided in Prince

George's County. Pierelli then placed her in handcuffs and transported her to the Commissioner

in Upper Marlboro, Maryland. *Id.* at 4. At no point was Plaintiff read her *Miranda* rights, a

standard procedure for officers to undertake upon arrest. *Id.*

At Upper Marlboro, the Plaintiff received a copy of the Washington County warrant.

Plaintiff is legally blind so she asked a good samaritan to read the warrant for her. The good

samaritan obliged, revealing that the description on the warrant was of a white woman from

Washington County, Maryland named "Holly Williams" who is sixty pounds lighter and twenty

years younger than Plaintiff. ECF No. 1 at 4. Plaintiff is an African-American woman from

Prince George's County.

Plaintiff avers that Pierelli knew of the clear discrepancies between the information

contained in the Washington County warrant and Plaintiff at the time he arrested her. *Id.* The

Commissioner, upon reviewing the warrant, also immediately noted that the warrant "clearly"

was not for the Plaintiff. *Id.* Four hours had elapsed between Plaintiff's detention by Officer

Pierelli and her release. *Id.*

On December 1, 2015, Plaintiff filed her Complaint in this Court. She asserts claims

against the United States pursuant to the Federal Tort Claims Act, alleging that the United States

is liable for her false imprisonment and false arrest because of the traffic stop and subsequent

arrest. Plaintiff also asserts a *Bivens* claim against Officer Pierelli in his individual capacity,

alleging that Plaintiff's Fourth Amendment rights were violated during the traffic stop and

arrest.[2] On July 25, 2016, Officer Pierelli filed a motion to dismiss, or alternatively, a motion for

summary judgment, seeking to have all the claims asserted against him dismissed on several

grounds. ECF No. 26.

## II.     STANDARD OF REVIEW

Officer Pierelli has moved to dismiss for failure to state a claim under Fed. R. Civ. P.

12(b)(6), or alternatively, for summary judgment under Fed. R. Civ. P. 56. When the parties

present matters outside of the pleadings and the court considers those matters, the court must

treat the motion as one for summary judgment. *See Gadsby by Gadsby v. Grasmick*, 109 F.3d

940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551,

556 (D. Md. 2003). Where, as here, the court considers only the pleadings and does not consider

the outside materials provided by the parties, the court may decide the motion under Rule

12(b)(6). *See Tuttle v. McHugh*, 457 F. App'x 234, 235 (4th Cir. 2011); Fed. R. Civ. P. 12(d).

---

[2] A *Bivens* action, named after *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971), allows a plaintiff to seek money damages from federal government officials who have violated her Fourth Amendment rights. While this Memorandum Opinion by refer to cases brought under 42 U.S.C. § 1983, permitting individuals to seek compensation against state officers and local government, "the qualified immunity analysis is identical under either cause of action." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## III.   ANALYSIS

## A.   Qualified Immunity Framework

Officer Pierelli's principal argument is that he is protected from liability because he is entitled to qualified immunity. The purpose of qualified immunity is to ensure that government officials performing discretionary functions, like police officers, can "perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, there is a substantial risk that the fear of personal liability and harassing litigation will "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Accordingly, government officials are entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Accord Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

The resolution of a qualified immunity defense is a two-pronged inquiry, requiring the court to determine: (1) whether the facts established by the plaintiff make out a violation of a federal right; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are required to consider the facts, "in the light most favorable to the party asserting the injury." *Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003) (citation and internal quotation marks omitted).

**B.     The Traffic Stop**

Officer Pierelli claims dismissal is warranted with respect to the traffic stop because the traffic stop did not infringe upon Williams' constitutional rights; reasonable suspicion existed to stop the vehicle because the license plate tags were not properly affixed. ECF No. 26-1 at 13. At this early stage in the proceedings, the Court disagrees.

The Fourth Amendment guards against "unreasonable searches and seizures," U.S. Const. amend. IV. A traffic stop is a "seizure" of the driver and all passengers within the meaning of the Fourth Amendment and must be reasonable under the circumstances. *See Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979). In that regard, the courts assess the constitutionality of a traffic stop under the two-prong standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Arizona v. Johnson*, 555 U.S. 323, 330–31 (2009). *Terry* requires a court to first assess whether the articulated bases for the traffic stop were legitimate. *See United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). Then, courts are instructed to examine whether the actions of the authorities during the traffic stop were "reasonably related in scope" to the bases for the seizure. *Id.* (internal quotation marks omitted).

*Terry*'s first prong is satisfied "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." *See Johnson*, 555 U.S. at 327. Such a violation may include failure to comply with traffic laws, however minor. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) (quoting *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir. 1990)). In assessing the legitimacy of a traffic stop, the court asks whether "the circumstances, viewed objectively, justify th[e] action." *See Whren v. United States*, 517 U.S. 806, 813 (1996) (internal quotation marks omitted); *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013) (observing that a traffic stop is legitimate "when officers observe a traffic violation, regardless of their true, subjective motives for stopping the vehicle"). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. N. Carolina*, 135 S. Ct. 530, 536 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The mistake may be one of law or fact, but is limited to those made by "reasonable men." *Id.*

According to Officer Pierelli, the only reason he conducted the initial traffic stop was because he observed that the vehicle's registration stickers were improperly displayed on the rear license plate, in violation of Maryland law. ECF No. 26-1 at 13. But taking the facts as pleaded in Plaintiff's complaint, the vehicle's license stickers were properly affixed. ECF No. 1 at 3. If true, no reasonable officer would suspect that Plaintiff or the driver, Mr. Benjamin, was violating any traffic laws at the time Officer Pierelli chose to pull over the vehicle. And if the Officer had no authority to stop the vehicle, then he would likewise have no authority to approach the vehicle, identify the Plaintiff and discover the outstanding warrants. At this stage, considering the allegations as pleaded in the complaint, the Court cannot find that the stop was supported by

6

a reasonable suspicion that a traffic violation had occurred, and so must deny Officer Pierelli's

motion to dismiss with respect to the traffic stop.

## C.      The Arrest

With regard to Plaintiff's arrest on an outstanding warrant, Defendant argues that because

he arrested Plaintiff on a validly issued warrant for a "Holly Ann Williams," the arrest was

mistaken but reasonably so, thus entitling him to qualified immunity. Whether the arrest was

reasonable depends on (1) whether the police had probable cause to arrest the person sought; and

(2) whether the arresting officers reasonably believed the arrestee to be the person sought. *Hill v.*

*California*, 401 U.S. 797, 802–04 (1971). The test of reasonableness "requires careful attention

to the facts and circumstances of each particular case," *Graham v. Connor*, 490 U.S. 386, 396

(1989), and must be judged by an objective standard in light of the facts he possessed at the time

of the arrest. *See Anderson*, 483 U.S. at 640; *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994)

(qualified immunity inquiry "must be filtered through the lens of the officer's perception at the

time of the incident in question"). Officers are not shielded from liability when they "act in an

objectively unreasonable manner in the circumstances, as for example, in failing to investigate

readily available exculpatory evidence." *Brown v. Wiita*, 7 Fed. App'x. 275, 279 (4th Cir. 2001).

Importantly, "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads

to the arrest of the wrong person . . . automatically constitutes a constitutional violation."

*Thompson v. Prince William County*, 753 F.2d 363, 364 (4th Cir. 1985). This is especially true in

the case of a traffic stop, where an officer risks never crossing paths with the suspect again if she

lets the suspect go, a problem if the suspect turns out to be the proper subject of the warrant.

*Patton v. Przybylski*, 822 F.2d 697, 699 (7th Cir. 1987).

Taking the Plaintiff's facts as plead in the complaint, Officer Pierelli knew that he was arresting Plaintiff even though she was (a) a different race than the person identified in the warrant, (b) twenty years older than the person identified in the warrant, (c) sixty pounds heavier than the person identified in the warrant, and (d) possessed a different home address. In addition, Plaintiff specifically protested to Officer Pierelli at the scene that the warrant could not possibly be for her because *she had never even been to Washington County.* ECF No. 1 at 4. *See, e.g.*, *Caceres v. Port Auth. of N.Y. & New Jersey*, No. 06 CIV. 1558 (JGK), 2008 WL 4386851, at *6 (S.D.N.Y. Sept. 24, 2008) (denying motion for summary judgment on grounds that officers did not have probable cause to arrest plaintiff in part because the plaintiff was five years older, eighteen pounds lighter and of a different race than the subject of the bench warrant). Instead of investigating and considering the discrepant information, Defendant held Plaintiff at the scene for forty-five minutes until a female officer could arrive to pat Plaintiff down. ECF No. 1 at 3. With Plaintiff's clear protest that she had not even been to Washington County, starkly discrepant identifying information, and nearly an hour during which time Pierelli could have investigated the applicability of the warrant and did not, the Court is loathe to dismiss this action without any further fact-finding.

In this regard, *Byer v. Brown*, 870 F.2d 975, 979 (5th Cir. 1989) is instructive.  There, an officer was confronted with the decision to arrest an individual based on a facially discrepant warrant.  In particular, the warrant sought the arrest for a "Tammy Brown" who lived at the same apartment complex that Plaintiff "Tamie Brown" had lived for one month. Upon learning of the slightly different names, the officer simply altered the name as it appeared in the warrant to fit Plaintiff's name rather than take any investigative steps. In affirming the verdict at trial for Plaintiff  for false arrest, the Fifth Circuit cautioned not to place too great weight on the claim

8

that the warrant was "facially valid" in the face of substantial challenge to its validity. *Id*. at 979

("The existence of a facially valid warrant for the arrest of one person does not authorize a police

officer to effect the arrest of another person, even if the officer believes the second person guilty

of the first person's crime and even if the two people have similar names. The fact that officers

may sometimes arrest the second person by an honest mistake does not constitute a legal excuse

for the conduct of an officer who makes no such mistake."); *See also Joye v. Richland

County/Richland County Sheriff's Dept.*, 47 F. Supp. 2d 663, 667 (D.S.C. 1999) (quoting *Brown*,

870 F.2d 978–79); *Simons v. Marin County*, 682 F. Supp. 1463, 1471–72 (N.D. Cal. 1987)

(denying summary judgment where "there was little if any reason other than a superficial

congruence of names, to believe that the plaintiff was in fact the man sought by the warrant.");

*Cannon v. Macon County*, 1 F.3d 1558 (11th Cir. 1993) (reversing judgment as a matter of law

on § 1983 claim based on discrepant height, eye color, date of birth and Plaintiff's protests of

mistaken identity on warrant).

   Although Officer Pierelli relies upon several cases upholding an officer's mistaken arrest

in the face of discrepant warrant information, each stands in a factually distinct posture than the

instant case. Perhaps the most troubling for Plaintiff is *Johnson v. Miller*, 680 F.2d 39 (7th Cir.

1982). There, the Seventh Circuit affirmed the dismissal of a § 1983 claim because the officer

executed a warrant based on the same last name at the address matching the warrant. *Id.* at 41. In

*Johnson* as here, Plaintiff was white and the warrant sought the arrest of a black woman. *Id.* at

40. Importantly, however, the *Johnson* complaint averred that the officer arrived at Plaintiff's

residence and Plaintiff *acknowledged* that she was the person named in the warrant. *Id.* at 41.

Because in *Johnson* there was "no allegation that [the officer] intentionally or even negligently

or otherwise wrongfully deprived Miss Johnson of her liberty or property," the Court held that it

9

would "not infer wrongfulness from a mere discrepancy in the description." *Id.* at 41.

Accordingly, Johnson's Complaint provided no facts on which to infer objective

unreasonableness on the part of the officer. *See also Tibbs v. City of Chicago*, 469 F.3d 661,

662–63 (affirming grant of summary judgment where Plaintiff acknowledged knowing about the

warrant and suggesting it rightfully applied to him despite discrepant identifying information).

Here, by contrast, Plaintiff specifically plead sufficient facts on which to infer that

Pierelli had good reason to believe the warrant was not for Plaintiff and nonetheless arrested her

anyway. Plaintiff avers that once she learned the warrant was out of Washington County, she

specifically told Pierelli at the scene that "it could not possibly be her because she had never

been to Washington County." ECF No. 1 at 3. The Complaint further alleges that Pierelli knew at

the time of arrest that the Washington County warrant was for a white woman who lived in

Washington County where Plaintiff's identification made plain she lived in Prince George's

County. Also Plaintiff is black, twenty years older, and sixty pounds heavier than the person

identified in the warrant. *Id.* at 4. Finally, the Complaint avers that the Commissioner "clearly"

knew that the Plaintiff standing before her "was not the same individual for which the warrant

was issued," thereby demonstrating the warrant was so facially disparate from Plaintiff that the

Commissioner acted swiftly to release her. *Id.* These facts, when taken in combination and in the

light most favorable to Plaintiff, portray an objectively unreasonable decision to arrest Plaintiff

on a warrant that clearly did not apply to her.

Officer Pierelli's argument that the arrest was based on another warrant out of Frederick

County does not upset this analysis. ECF No. 26-1 at 17. On a motion to dismiss, this Court

considers only the well-plead allegations in the Complaint. The Complaint here avers that

Plaintiff was arrested on a warrant bearing no resemblance to her apart from name and gender.

Arguably, the Frederick County warrant potentially suffers from its own set of deficiencies in that even according to Pierelli there were no identifiers associated with that warrant. *Id.* at 18. That said, the Court will not speculate as to the significance of the Frederick County warrant without affording both parties the opportunity to engage in meaningful discovery. *White*, 119 F. Supp. 3d at 428. *See also Pearson*, 555 U.S. at 238 (noting that qualified immunity analysis is difficult to execute at the pleading stage where "the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed") (citation and internal quotation marks omitted).

Finally, Officer Pierelli argues that even if his actions were objectively unreasonable, he is entitled to qualified immunity because Plaintiff's rights were not clearly established as of January 14, 2014. Pierelli correctly notes that an officer will not be entitled to qualified immunity where "existing precedent" places the constitutional question "beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). The Court at this stage has precious little on which to find that the constitutional violation as pleaded in the Complaint was not clearly established. Plaintiff has alleged that Pierelli knew, effectively, he was arresting the wrong person at the time he arrested her. Plaintiff avers that she told Pierelli she had never set foot in Washington County, that she lived at an address different than that appearing on the warrant, and that she, by all appearances, did not match the description of the Holly Williams sought in the warrant. On the facts as plead—which are the only facts to be considered at this stage—Pierelli is accused of deliberately and willfully ignoring all signs that he arrested the wrong person so flagrantly that even the Commissioner could find that Plaintiff "clearly was not the same individual for which the warrant was issued." ECF No. 1 at 4.

Because the facts as pleaded in Plaintiff's Complaint do not support qualified immunity, it would be improper to so hold, even though the Fourth Circuit "prefer[s] questions of qualified immunity to be decided 'at the earliest possible stage in litigation.'" *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (citation omitted). Such preference cannot be construed to eclipse the foundational rules of civil procedure. This is especially so where, as here, "plaintiff and the defendant police officer give conflicting accounts of the alleged events" *White v. Chapman*, 119 F. Supp. 3d 420, 428 (E.D. Va. 2015) (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014)). Further factual development may change this analysis, to be sure. But at this stage, taken all well-pleaded facts in the light most favorable to Plaintiff, no qualified immunity exists where the lion's share of evidence at the time of arrest demonstrates to the officer "that the person he wanted to arrest was not the person described in the warrants." *Joye*, 47 F. Supp. 2d at 666 (quoting *Brown*, 870 F.2d 978–79).

## IV.   CONCLUSION

For the foregoing reasons, Officer Pierelli's motion to dismiss is denied. A separate order will follow.

 11/16/2016                                              /S/
Date                                                           Paula Xinis
                                                               United States District Judge