IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOLLY ANN WILLIAMS            *

    Plaintiff,                      *

  v.                              *       Civil Action No. PX-15-3685

                               *

UNITED STATES et al.,

                               *

    Defendants.

******

**MEMORANDUM OPINION AND ORDER**

Pending in this civil rights case is a motion for summary judgment filed by Defendants Anthony Pierelli and the United States of America. ECF No. 53. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the following reasons, the motion is granted.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

The facts as summarized are taken from the record and construed in the light most favorable to Plaintiff Holly Ann Williams ("Williams"). On January 14, 2014, United States Park Police Officer Anthony Pierelli ("Pierelli") pulled over a car registered to Williams on Suitland Parkway in Maryland. ECF No. 53-3 at 29; ECF No. 53-2 at 16 (Williams Dep. 60:7–11). Williams, who is legally blind, was sitting in the back seat between her two daughters, while her father sat in the front passenger seat. ECF No. 53-2 at 15 (Williams Dep. 56:13–19). Another person was driving the family to a doctor's appointment for Williams' father. ECF No. 53-2 at 11 (Williams Dep. 39:3–40:19). One of Williams' daughters was nine months pregnant at the time. ECF No. 53-2 at 13 (Williams Dep. 48:6–20).

1

Pierelli pulled the car over because he observed a problem with the validation stickers (or "tabs") affixed to the vehicle's license plate. ECF No. 53-3 at 29; ECF No. 53-2 at 16 (Williams Dep. 60:7–11). The tabs on the license plate of the vehicle—one of which is supposed to reflect the month and the other the year of the vehicle registration's expiration date—appeared to be improper. As Pierelli explained, the "10" sticker and the "14" sticker on the license plate both had white backgrounds, which indicated to Pierelli that both were year tabs, and so the license plate did not have a valid month tab affixed to it. ECF No. 53-3 at 28–29; ECF No. 53-3 at 6 (Pierelli Dep. 17:1–14). Pierelli confirmed during the stop that the vehicle was validly registered, but that the correct registration expiration date was June 2014. This meant that the "14" sticker reflected the correct year, but the "10" sticker, in fact, did not reflect the correct month. ECF No. 53-3 at 18 (Pierelli Dep. 66:15-21); ECF No. 53-5 at 1.

Prior to pulling over the vehicle, Pierelli also ran the vehicle's license plate number through a law enforcement database accessible via his patrol car's laptop. This search alerted Pierelli to a Frederick County arrest warrant that was keyed to the car's registration. The warrant was for a Holly Ann Williams, which matched the name of the vehicle's registered owner. ECF No. 53-3 at 5, 9 (Pierelli Dep. 14:11–14, 19:2–20:11); *see* ECF No. 53-3 at 29. No other biographic information was available to Pierelli through this database. ECF No. 53-3 at 8–9 (Pierelli Dep. 28:10–32:3); ECF No. 53-3 at 21 (Pierelli Dep. 79:15–18).

During the traffic stop, Pierelli called Frederick County to confirm that the warrant was still outstanding and for "Holly Ann Williams." ECF No. 53-3 at 12–13 (Pierelli Dep. 44:9–45:2); ECF No. 56-8; *see* ECF No. 53-3 at 20–21 (Pierelli Dep. 76:19–77:22). Pierelli was not provided additional information about the wanted individual while on the phone with Frederick County. ECF No. 53-3 at 12–13 (Pierelli Dep. 44:20–47:3).

After Pierelli confirmed that a Holly Ann Williams was in the vehicle and was the vehicle's registered owner, he requested a female officer to respond as backup to assist with Williams' arrest. ECF No. 53-3 at 7 (Pierelli Dep. 22:22–23:9). An unidentified Prince George's County female officer responded. ECF No. 53-3 at 20 (Pierelli Dep 76:6–18); *see also* ECF No. 53-3 at 11 (Pierelli Dep. 37:6–20). According to Williams, the female officer asked Williams if someone was suing her in Washington County. ECF No. 53-2 (Williams Dep. 119:12–121:11). Williams further notes that a second warrant had been active for a "Holly Ann Williams" in Washington County, but Pierelli attested that he based his arrest only on the Frederick County warrant connected to the vehicle registration, and that he did not know of a Washington County warrant at the time of the arrest. ECF No. 53-3 at 25–26 (Pierelli Dep. 96:18–98:8, 99:8–99:19).

Williams testified that Pierelli never told her about a warrant, but she nonetheless protested generally that he had the wrong person. Pierelli did not attempt to verify Williams' claims of mistaken identity. ECF No. 53-3 at 21–22 (Pierelli Dep. 79:19–81:10). When Pierelli handcuffed Williams, she asked to be handcuffed with her hands in front of her instead of behind her back because she suffers from arm and shoulder pain due to a stroke. ECF No. 53-2 at 20 (Williams Dep. 74:6–11). Pierelli refused, and the pain caused Williams to collapse. ECF No. 53-2 at 20 (Williams Dep. 74:12–20); *see* ECF No. 53-3 at 22 (Pierelli Dep. 83:12–18). Pierelli pulled Williams to her feet and put her in the back of his police car. ECF No. 53-2 at 20 (Williams Dep. 74:17–75:1). Pierelli then drove Williams to the Upper Marlboro Detention Center ("Upper Marlboro"), and reported their arrival at 3:14 p.m. ECF No. 53-5 at 2.

While Williams was being held, full warrant information was faxed from Frederick County to Upper Marlboro. ECF No. 53-2 at 23 (Williams Dep. 87:6–8); *see* ECF No. 53-2 at

3

23 (Williams Dep. 86:9–18). This information revealed that the Frederick County warrant was issued for a white woman born in 1984. ECF No. 56-14. Williams is African American and more than twenty years older than the individual identified in the warrant. ECF No. 53-3 at 1. Williams estimates that she was detained for two hours before she learned the warrant was for another "Holly Ann Williams," and was not released until an additional two hours had passed. ECF No. 53-2 at 24, 26 (Williams Dep. 92:6–11, 100:5–18). Since having mistakenly arrested Williams, Pierelli now takes additional measures to verify the identity of a suspect prior to arresting the person on a warrant. ECF No. 53-3 at 12 (Pierelli Dep. 42:22–43:3).

As a result of this unfortunate incident, Williams has sued Pierelli and the United States Park Police, alleging false arrest (Count I), false imprisonment (Count II), a Fourth Amendment claim of unlawful arrest and detention under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Count III), and respondeat superior (Count IV). Defendants previously moved to dismiss the action in its entirety, which this Court denied. ECF No. 32 at 10–12 ECF No. 33.

Defendants now move for summary judgment on all claims. *See* ECF No. 53. Defendants principally argue that Pierelli is entitled to qualified immunity as to the *Bivens* cause of action, and that Williams failed to establish successful tort claims. Williams counters that genuine issues of disputed fact preclude immunity, and that Pierelli acted with malice during her stop and arrest. For the reasons below, the Court GRANTS Defendants' motion.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom. Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986); *Celotex,* 477 U.S. at 322–23). The party opposing summary judgment "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). If a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record over the averred fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B. Qualified Immunity

The resolution of a qualified immunity defense rests on (1) whether the facts established by the plaintiff make out a violation of a federal right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). An official is entitled to qualified immunity so long as his conduct does not violate a plaintiff's clearly established constitutional rights as known to a reasonable officer in the defendant's position. *Mullenix*, 136 S. Ct. at 308. To determine if a right is clearly established, this Court considers published precedent from United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the Maryland Court of Appeals, but "in the absence of directly on-point, binding authority," the Court also may "consider whether the right was clearly established based on general constitutional principles or a consensus of persuasive authority." *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (internal quotation marks and citation omitted). A right is clearly established where "existing precedent" places the constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The purpose of qualified immunity is to ensure that government officials performing discretionary functions can "perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). At base, qualified immunity is designed to protect government actors from operating under pervasive fear of personal liability and harassing litigation that would "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

An officer's reasonable mistake does not defeat qualified immunity. *See Anderson*, 438 U.S. at 641. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for

some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. N. Carolina*, 135 S. Ct. 530, 536 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The mistake may be one of law or fact, but is limited to those made by "reasonable men." *Id.* In determining the issue of qualified immunity, the Court considers the relevant facts "in the light most favorable to the party asserting the injury." *Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### III. DISCUSSION

#### A. Qualified Immunity as to Pierelli

##### 1. Traffic Stop

Pierelli argues that he is qualifiedly immune for his mistaken arrest and detention of Williams. The Court agrees.

As a preliminary matter, the Court must define the contours of the constitutional rights at issue. A traffic stop constitutes a seizure for purposes of the Fourth Amendment. *See Brendlin v. California*, 551 U.S. 249, 251 (2007). Where, as here, an officer has "reasonable suspicion" or "a particularized and objective basis for suspecting" that an offense is being committed by one or more occupants of the vehicle, an officer may stop the vehicle to investigate. *See Heien*, 135 S. Ct. at 536. Whether an officer has reasonable suspicion to execute the traffic stop depends not on his subjective motivations, but whether independent objective facts justify the official action. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Johnson*, 734 F.3d 270, 275 (4th Cir. 2013); *United States v. Williams*, 740 F.3d 308, 312 (4th Cir. 2014) ("If an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the

7

Fourth Amendment . . . regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity." (internal marks and citation omitted)). Notably, this standard is met when an officer observes a traffic offense, "however minor." *Williams*, 740 F.3d at 312. The actions of the authorities during the traffic stop must be "reasonably related in scope" to the basis for the stop, *see United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (internal quotation marks omitted), or otherwise objectively justified by the circumstances of the stop, *see Ohio v. Robinette*, 519 U.S. 33, 38 (1996).

  a. **Initial Stop**

Pierelli testified plainly that he stopped the vehicle in which Williams was a passenger because of the irregular date tabs affixed to the license plate. ECF No. 53-3 at 5–6 (Pierelli Dep. 16:10–17:14); ECF No. 53-3 at 17 (Pierelli Dep. 63:6–64:10); *see* ECF No. 53-3 at 31. A vehicle registered in Maryland must display a valid license plate and required tabs in order to be operated in the state. *See* Md. Code Ann., Transp. §§ 13-411(d), (e); *United States v. Johnson*, Criminal Action No. TDC-16-0135, 2017 WL 2256599, at *4 (D. Md. May 22, 2017); *see also Mitchell v. Md. Motor Vehicle Admin.*, 225 Md. App. 529, 559 (Md. Ct. Spec. App. 2015). In particular, Pierelli testified that based on his training and experience as a United States Park Police officer since 2009, he believed that the colors of the tabs on Williams' vehicle indicated that they did not comport with the requirements of Maryland law. ECF No. 53-3 at 3, 17 (Pierelli Dep. 7:13–15, 64:3–10). Accordingly, based on the uncontroverted evidence in this case, Pierelli had sufficient objective facts by which he could stop the vehicle. *Accord Parker v. Prince George's Cty.*, Civil Action No. DKC 2009-0055, 2009 WL 2230393, at *4 (D. Md. July

22, 2009) (officer had reasonable suspicion to believe a traffic violation had occurred upon observing an altered Maryland license plate).[1]

In attempting to undercut the reasonableness of Pierelli's actions, Williams argues that the pertinent motor vehicle laws and regulations do not *require* date tabs to be a certain color or style. This is a different matter than whether Pierelli, based on his training and experience in enforcing Maryland motor vehicle laws, identified irregularities in such tabs sufficient to form a reasonable suspicion that the tabs were improper. Pierelli executed the stop based on his own reasonable belief, in light of his experience, that Williams' vehicle was not displaying valid registration tabs as required. *Cf. United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016) (court entitled to credit officer's stop based on officer's belief that window tint was "too dark" and thus in violation of Virginia law). Notably, Pierelli's follow-up investigation revealed the actual registration month was June (the sixth month of the year), and so the tab affixed to the license plate bearing the number "10" was invalid. Indeed, even if Pierelli had been mistaken about the propriety of Williams' tabs, such a mistake does not render the stop unreasonable. *See Heien*, 135 S. Ct. at 536, 539.[2] As such, Pierelli did not violate Williams' Fourth Amendment rights by stopping her vehicle.

---

[1] Williams also seems to take issue with Pierelli's running the vehicle's license plate number and discovering the outstanding warrant prior to stopping the vehicle. ECF No. 56 at 10. To the extent Williams attempts to challenge Pierelli running the license number, it bears noting that no reasonable expectation of privacy exists in the license information, and so an officer may run a license number through a law enforcement database at any time. *See Darling v. Falls*, 236 F. Supp. 3d 914, 921 (M.D.N.C. 2017) (collecting cases)); *cf. United States v. Collins*, 650 F. Supp. 2d 527, 528, 532 (S.D. W. Va. 2009) (denying a motion to suppress evidence gathered after a stop that was initiated by the police running a vehicle's license plates); *United States v. Santana-Gomez*, 547 F. App'x 904, 907 (10th Cir. 2013). To the extent that Williams contends Pierelli's "true motivation" for initiating the stop was his learning of the warrant, and not the irregularity of the vehicle's tabs, the Court has previously determined that this pretext argument is unavailing. *See supra*, pp. 7–8.

[2] Williams cites to *Williams*, 740 F.3d 308, to argue that a mistake of law can never be objectively reasonable. *See* ECF No. 56 at 29. *Williams* was abrogated by *Heien*. *See also Jones v. Chapman*, Civil Action No. ELH-14-2627, 2017 WL 2472220, at *17 (D. Md. June 7, 2017) (citing *Heien*); *id.* at 13 n.28 (noting the overruling

### b. Conduct During and Duration of Stop

The Court next assesses the constitutionality of Pierelli's actions after the initial stop. For safety reasons, an officer may obtain the identities of the vehicle's occupants and run a check for outstanding arrest warrants. *See Palmer*, 820 F.3d at 651 ("A motorist stopped by the police is obliged to endure certain negligibly burdensome precautions that may not relate directly to the reason for the traffic stop, such as checking whether the driver has a criminal record or outstanding warrants.") (internal quotation marks and citation omitted). The continued detention itself does not violate the occupants' constitutional rights so long as the detention is objectively justified by the particular circumstances. *See Robinette*, 519 U.S. at 38–39.

Williams principally contends that Pierelli held her at the scene for 45 minutes, which she argues was an unreasonable period of time. *See* ECF No. 56 at 14. Although Pierelli contends the time was shorter, this disputed fact is not material to the Court's analysis. Putting to one side that Williams' time estimation is both speculative and contradicted by the record, *see* ECF No. 56 at 14; ECF No. 53-5 at 2, even if the Court accepts Williams' time estimate as true, the record reflects that Pierelli acted diligently during the stop to confirm the status of the vehicle registration, verify outstanding warrants, and secure a female officer as backup. *See United States v. Hill*, 852 F.3d 377, 382 (4th Cir. 2017) ("An officer may engage in ordinary inquiries incident to [a] traffic stop, such as . . . verifying the registration of a vehicle . . . and determining whether the driver is subject to outstanding warrants." (internal quotation marks and citation omitted)); *Palmer*, 820 F.3d at 649 (officer is entitled to conduct safety-related checks that do not bear directly on reasons for traffic stop, such as checking for criminal records and

---

in part of prior precedent on the issue of mistake of law, reiterating that if an error is objectively reasonable qualified immunity is appropriate).

outstanding arrest warrants).  The reasonableness of Pierelli's actions is further supported by the fact that the warrant information was triggered by running the vehicle's license plate number.

By contrast, no evidence exists that Pierelli detained Williams' vehicle and its occupants longer than necessary to confirm or dispel his suspicion about the registration and to reasonably respond to the associated warrant information.  *See United States v. Bowman*, 884 F.3d 200, 209–10 (4th Cir. 2018); *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008) ("If a police officer wants to detain a driver beyond the scope of a routine traffic stop . . . he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place."); *see also United States v. McBride*, 676 F.3d 385, 391–92 (4th Cir. 2012).  Pierelli is entitled to qualified immunity for his stop of Williams' vehicle.

### 2. Arrest

The Court next turns to whether Pierelli is entitled to qualified immunity for Williams' arrest.  Williams argues that Pierelli's arrest of the wrong "Holly Ann Williams" was unreasonable and in violation of Williams' clearly established Fourth Amendment rights to be free from warrantless arrests.  The reasonableness of an arrest depends on (1) whether an officer had probable cause to arrest the person sought; and (2) whether the arresting officer reasonably believed the arrestee to be the person sought.  *Hill v. California*, 401 U.S. 797, 802–04 (1971).  The arrest is judged by an objective standard in light of the facts the officer possessed at the time of the arrest.  *See Anderson*, 483 U.S. at 640; *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994) (qualified immunity inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident in question").  Officers are not shielded from liability when they "act in an objectively unreasonable manner in the circumstances, as for example, in failing to investigate readily available exculpatory evidence."  *Brown v. Wiita*, 7 F. App'x 275, 279 (4th Cir. 2001).

Viewing the evidence most favorably to Williams, the Court does not find that Pierelli's arrest of Williams violated her Fourth Amendment rights. It is undisputed that Pierelli learned of the outstanding warrant for "Holly Ann Williams" by running her vehicle's license plate through the law enforcement database. Further, Williams confirmed during the stop that her name was Holly Ann Williams *and* that she was the registered owner of the car. *See* ECF No. 53-2 at 18 (Williams Dep. 67:2–7). Pierelli could reasonably arrest Williams based on this information alone. *Glass v. Philadephia*, 455 F. Supp. 2d 302, 332, 357 n.81 (E.D. Pa. 2006) (when vehicle stop was precipitated by a traffic violation and led to the discovery of a warrant, there was no liability for arrest); *United States v. Woods*, 468 F.2d 1024, 1025 (9th Cir. 1972) (confirmation by radio communication from police headquarters of warrants in name that was given to police officer during traffic stop provided sufficient probable cause to arrest); *accord United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2012) (where officer during lawful stop has probable cause to believe an individual stopped has committed a crime, arrest is proper).

Alternatively, even assuming that Pierelli's mistaken arrest of Williams violated her Fourth Amendment rights, the right at issue was not clearly established in the context of this case. *See Jones v. Chapman*, No. Civil Action No. ELH-14-2627, 2017 WL 2472220, at *31 (D. Md. June 7, 2017). Williams maintains that Pierelli could have discovered that she was the wrong person had he conducted a more thorough investigation prior to arresting her on the warrant, and that his failure to do so violated her constitutional rights. Given the particular facts of this case—that the warrant was keyed to Williams' vehicle registration and matched her full name—the Court finds no support for the proposition that Pierelli was required to do more. This is particularly so where Maryland law permits an officer to execute an arrest warrant bearing a first and a last name alone, unless the officer has reason to doubt that they are one and the same.

*See State v. Dett*, 391 Md. 81, 95–96 (2006) ("it is reasonable for the person charged with executing the warrant to rely on the name given in the warrant unless he knows or is convinced beyond a reasonable doubt that a mistake has been made" (internal quotation marks omitted)); *id.* at 96 (if an officer "knows by his own senses, or has information which leaves him no room reasonably to doubt, that a mistake has been made" then an arrest is not privileged (internal quotation marks and citations omitted)).

Nor can the Court find any precedent that establishes the rule that Williams seeks to enforce: that an officer who learns of an outstanding warrant issued in the precise name (first, middle, and last) of a vehicle's registered owner by running the license plate number must nonetheless conduct further research prior to arrest. *See Wiita*, 7 F. App'x at 278–79 ("officers executing a warrant are not required to investigate independently every claim of innocence, or to be absolutely certain that the person arrested is the person identified in the warrant." (internal quotation marks and citations omitted)). In the absence of such guidance, Pierelli is entitled to qualified immunity for arresting Williams on the warrant.

### B. Tort Claims

Williams also seeks to recover for the common-law torts of false arrest and false imprisonment.[3] Both intentional torts require evidence that the defendant deprived the plaintiff of her liberty without consent and without legal justification. *Dett v. State*, 161 Md. App. 429, 441 (Md. Ct. Spec. App. 2005). Legal justification is equivalent to legal authority under the law of arrest. *Id.* "[L]egal justification to arrest may depend, in part, upon the arresting officer's

---

[3] Because Williams' common law tort claims do not survive on the merits, the Court need not address the parties' arguments regarding the Federal Tort Claims Act or Defendants' questionable reading of *Norton v. United States*, 581 F.2d 390, 393 (4th Cir. 1978). The Court also need not address whether Pierelli acted with malice.

13

good faith and reasonable belief in his authority to arrest." *Ashton v. Brown*, 339 Md. 70, 120 (1995). "The essence of the civil wrong in each tort is an unlawful detention." *Dett*, 161 Md. App. at 441.

As the Court's foregoing discussion makes clear, even when construing the facts most favorably to Williams, she can point to no genuine dispute of material fact as to whether her arrest was objectively unreasonable, impermissible in scope, or lacking in legal justification. *See Hill*, 852 F.3d at 382 (officer conducting lawful stop may search for warrants); *Palmer*, 820 F.3d at 649 (same); *Dett*, 161 Md. App. at 443 ("An arrest warrant that is facially valid provides legal authority to arrest and detain the person who is the subject of the warrant."). Because the record supports Pierelli's legal justification to stop Williams' vehicle and arrest her on a facially valid warrant, summary judgment is granted in favor of Defendant on Williams' tort claims.

## IV. CONCLUSION

For the reasons discussed above, the evidence in the record gives rise to no genuine dispute of material fact as to Williams' claims. Therefore, it is this 10th day of July, 2018, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion for Summary Judgment filed by Defendants UNITED STATES OF AMERICA and ANTHONY PIERELLI (ECF No. 53) BE, and the same hereby IS, GRANTED;

2. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties; and

3. The Clerk is directed to CLOSE this case.

| 7/10/2018 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |